**Collum D. BIRDWELL, Plaintiff,**

v.

**The UNITED STATES, Defendant.**

No. 423–83C.

United States Claims Court.

March 12, 1987.

John A. Everhard, King & Everhard, P.C., Falls Church, Va., for plaintiff.

Alvin A. Schall, Washington, D.C., attorney of record, with whom was George M. Beasley, III, Sr. Trial Counsel, and Asst. Atty. Gen. Richard K. Willard, for defendant.

## OPINION

HORN, Judge.

Plaintiff, Collum D. Birdwell, is an Air Force Reserve Officer Chaplain who retired from active duty on June 30, 1977. Prior to his involuntary separation, plaintiff was considered, but not selected, for promotion to the temporary grade of Major by a Temporary Major Selection Board convened on October 18, 1976.

On June 24, 1983, plaintiff filed this military pay case seeking reinstatement to active duty with back pay and the resulting service benefits. Plaintiff asserts that his separation was improper because it was based upon an incorrect Officer's Effectiveness Report (OER) dated December 5, 1975. Plaintiff brought this action, having pursued unsuccessfully an administrative challenge. Defendant contends that plaintiff's claim is barred by the doctrine of laches and, alternatively, that the adminis-

trative decision was not arbitrary or capricious and should be upheld.

The case is before this Court on the defendant's motion and the plaintiff's cross-motion for summary judgment. The Court's jurisdiction is not contested by either party to the case. The case is ripe for summary disposition based on the pending motions and supporting briefs, as the parties have agreed to the pertinent facts.

After reviewing the documents in the record already submitted to the Court, it does not appear that the Air Force acted either arbitrarily or capriciously on plaintiff's claims. However, based upon the authority and reasons cited below, this Court finds that it should not reach the merits of the case because the plaintiff's claim is barred from recovery by the doctrine of laches.

## BACKGROUND

In October of 1976, plaintiff, a reserve officer, was on active duty in the United States Air Force, serving as a Chaplain. Plaintiff was considered for promotion to the temporary grade of Major by the Temporary Major Selection Board (Selection Board). Plaintiff was not selected for promotion. As a result of his nonselection, plaintiff was given notice that he would be released from active duty under the broad authority conferred upon the Secretary of the Air Force by 10 U.S.C. § 681 (1976),[1] unless he requested to be retained on active reserve duty. Plaintiff elected to retain his reserve commission and subsequently served as a non-extended Active Duty Reserve Officer Chaplain and later received the rank of Major.

At the time the Selection Board considered plaintiff for promotion, eleven OER's were in his file. The last OER covered the period of November 17, 1974 through July 1, 1975. Following this last rating, plaintiff was passed over for promotion. Eighteen months lapsed between December 5, 1975, the date of the rating,

and June, 1977, when plaintiff appealed the rating to the Air Force Officer Personnel Records Review Board for Correction of Military Records ("OPRRB"). The appeal was denied within the same month, June 1977.

On July 18, 1980, two years and one month after the OPRRB decision, plaintiff appealed the OPRRB decision to the Air Force Board for the Correction of Military Records (AFBCMR). In his application to the AFBCMR, plaintiff sought removal of the 1974–1975 OER, cancellation of the nonselection for promotion in 1976, and recall to active duty with back pay and allowances. On August 26, 1982, the AFBCMR, after noting that plaintiff's application was not timely filed, denied plaintiff's application on the merits, concluding that there was insufficient evidence presented to demonstrate the existence of a probable error or injustice. Ten months subsequent to the AFBCMR's denial of plaintiff's claim, and six days prior to the expiration of the statute of limitations, plaintiff filed this action, seeking the same relief he was denied by the AFBCMR.

## DISCUSSION

### Statute of Limitations

In this Court, an action must be commenced for military service reinstatement, back pay and associated benefits, within six years from the date on which the claim accrues, unless certain established events have occurred to toll the otherwise applicable statute of limitations. 28 U.S.C. § 2501 (1976).

 In military separation cases, plaintiff's claims accrue, for purposes of the statute of limitations, on the date of discharge. *Mathis v. United States*, 183 Ct.Cl. 145, 147, 391 F.2d 938, 939 (1968). Administrative appeals do not toll the statute of limitations. *Kirk v. United States*, 164 Ct.Cl. 738 (1964). Thus, this plaintiff's cause of action accrued on June 30, 1977,

---

1. Absent war or a national emergency, the Secretary is granted the following broad discretionary power to release reserves from active duty:

[t]he Secretary concerned may at any time release a Reserve under his jurisdiction from active duty. 10 U.S.C. § 681(a) (1976).

the date of his release from active duty, despite the fact that he chose to retain his reserve commission and subsequently served as a non-extended Active Duty Reserve Officer. See, *Deering v. United States*, 223 Ct.Cl. 342, 347, 620 F.2d 242, 244 (1980). This action was filed on June 24, 1983, which was within the statute of limitations, by six days.

■ As stated in *Deering*, however, a statute of limitation does not confer an entitlement to a grace period in which to sue. Rather, the statute of limitations establishes an outside limit beyond which Congress has determined claims are simply too stale to be litigated fairly. As a result, implicit within the statute of limitations is a shorter period in which the doctrine of laches may provide an affirmative defense, in the event a particular plaintiff has unreasonably delayed and caused some prejudice to the Government.[2] *Deering v. United States, supra* 223 Ct.Cl. at 348–349, 620 F.2d at 245.

*Doctrine of Laches*

■ The fundamental principles for the application of the doctrine of laches in military pay cases were crystallized by this Court's predecessor, the Court of Claims, in the case of *Brundage v. United States*, 205 Ct.Cl. 502, 506, 504 F.2d 1382, 1384 (1974), *cert. denied*, 421 U.S. 998, 95 S.Ct. 2395, 44 L.Ed.2d 665 (1975). The *Brundage* Court explained the laches doctrine, as follows:

> Laches is a "fairness" doctrine by which relief is denied to one who has unreasonably and inexcusably delayed in the assertion of a claim. Failure to act promptly will operate as a bar to recovery where the delay results in injury for prejudice to the adverse party. The doctrine of laches is based upon considera-

tions of public policy, which require, for the peace of society, the discouragement of stale demands. It recognizes the need for speedy vindication or enforcement of rights, so that courts may arrive at safe conclusions as to the truth. 205 Ct.Cl. at 505–506, 504 F.2d at 1384.

Accordingly, defendant must satisfy two elements to establish an affirmative defense of laches to bar recovery, *i.e.*, demonstrate (1) that the plaintiff has inexcusably lacked diligence in bringing the lawsuit and (2) that the defendant would be prejudiced as a result of plaintiff's delay.

In considering the application of the doctrine of laches herein, this Court is mindful of two precedents inherited from the Court of Claims and recently reiterated by the Court of Appeals for the Federal Circuit, *i.e.*, that the doctrine of laches applies to military pay cases, and should be applied " 'apart from and irrespective of' the Court's statute of limitations." *Pepper v. United States*, 794 F.2d 1571, 1573 (1986), quoting from *Brundage v. United States*, 205 Ct.Cl. at 506, 504 F.2d at 1384. Thus, the fact that plaintiff filed his claim within the six-year statute of limitations allows this Court to consider invoking the doctrine of laches to bar plaintiff's claim in this military pay case, if the facts demonstrate a finding of inexcusable delay with resultant prejudice to the defendant. See *Brundage, supra*.

*Unreasonable and Inexcusable Delay*

In determining whether or not to apply the doctrine of laches, the Court must evaluate carefully the period of delay between the time the cause of action accrued and the date the plaintiff actually filed the lawsuit in this Court. The contested OER was signed by the reviewer on December 5, 1975. Plaintiff did not attempt to have the alleged defective OER corrected for eigh-

---

**2.** In *Andrews v. United States*, 6 Cl.Ct. 204 (1984), aff'd *sub. nom; Burden v. United States*, 770 F.2d 179 (Fed.Cir.1985), a four and one-half year delay in challenging a selection board composition was held sufficient to impose laches. *See also Brundage v. United States*, 205 Ct.Cl. 502, 504 F.2d 1382 (1974), *cert. denied*, 421 U.S. 998, 95 S.Ct. 2395, 44 L.Ed.2d 665 (1975) (delay of three years and eight months from the date of discharge and the filing of suit was found to be excessive); *Deering, supra* (laches may be applied where the delay is less than six years); *Alpert v. United States*, 161 Ct.Cl. 810, 820–21 (1963), (citing 13 cases in which laches were applied where the delay was less than four and one-half years).

teen months, until June 1977, when he filed an appeal with OPRRB. His appeal was denied and he was released from military service on June 30, 1977. Although plaintiff's judicial claim did not arise until his discharge, the need for plaintiff to be diligent about challenging the disputed OER, arose at the time it was issued in December of 1975. *Pepper, supra; Adkins v. United States*, 228 Ct.Cl. 909 (1981).

■ The record in the case is replete with delays on the part of the plaintiff regarding pursuit by him of available remedies. Initially, plaintiff delayed eighteen months from December of 1975 until June of 1977, before appealing the OER to the OPRRB. Following the OPRRB's denial in June 1977, his discharge, and commencement of the period by which the applicable statute of limitations would be computed, plaintiff waited thirty-seven months from June 30, 1977 until July 18, 1980, before he appealed OPRRB's decision to the Correction Board. Following the Correction Board's decision on August 28, 1982, another ten months passed before plaintiff filed this action in this Court on June 24, 1983. The initial eighteen-month delay, followed by an additional thirty-seven month delay, followed by a ten-month delay, excluding the period between July 1980 and August 1982 when the AFBCMR was deliberating, consists of a total of five years and five months delay which is applicable to determine whether or not to apply the doctrine of laches. (This is a separate computation from determination of the time in which plaintiff had to file suit under the applicable statute of limitations, starting in June 1977 when he was released from the Service.)

■ In his brief, and at oral argument, plaintiff listed several reasons by which he attempted to justify the delay in filing suit. To account for the thirty-seven month delay in appealing to the AFBCMR, he stated that a certain amount of time was spent contacting witnesses, obtaining statements, and assembling evidence. Simple case preparation, however, has been found to be insufficient to excuse unreasonable delay, even when it involved hiring of an attorney, who corresponded with the Air Force in an effort to obtain documents pertinent to the prosecution of the case. See *Brundage v. United States, supra*. Although plaintiff has contended that since he is appealing the AFBCMR's decision, he could not have filed suit in this Court until the Board had rendered its decision in August of 1982, in fact, he could have filed suit on the date of his discharge, which is the date which starts the applicable statute of limitations running.

Plaintiff also attempts to explain his delay in filing suit in this Court by stating that defendant intentionally did not reveal to the public the composition of the selection board until forced to do so through discovery in connection with recent litigation.[3] The Claims Court has held that absent inquiry, there is no duty on the part of the Government to disclose the composition of a selection board. *Foster v. United States*, 3 Cl.Ct. 440, 444 (1983), aff'd 733 F.2d 88 (Fed.Cir.1984); see also, *Andrews v. United States*, 6 Cl.Ct. at 209 (1984). (This claim was asserted in *Wilcox v. United States*, 3 Cl.Ct. 83 (1983), aff'd, 769 F.2d 743 (Fed.Cir.1985), as a basis to toll the statute of limitations and was rejected.)

Finally, plaintiff contends that he did not learn of the alleged error in the rating in the OER until March of 1980. The Claims Court in *Jones v. United States*, 6 Cl.Ct. 531, 533 (1984), stated that "professed ignorance of the factual basis of a claim does not justify delay in filing suit."

Shorter delays, excluding time spent in exhausting permissive administrative remedies, have allowed Courts to invoke the doctrine of laches to bar a military pay lawsuit. See *Andrews v. United States*, 6

---

3. Plaintiff appears not to have raised the issue of the composition of the Selection Board until he filed the complaint in this Court. Since the composition of the Selection Board was not challenged by plaintiff in the proceedings before the AFBCMR, this Court fails to understand why that issue would be grounds for delay. Moreover, plaintiff acknowledges in his brief that this Court's consideration is limited to the record before the AFBCMR.

Cl.Ct. 204 (1984) *aff'd sub nom., Burden v. United States,* 770 F.2d 179 (Fed.Cir.1985); *Brundage, supra; Deering, supra.* Following these precedents, this Court finds plaintiff's excuses insufficient to justify the five-year and five-month delay in filing suit. However, delay alone is insufficient to render plaintiff's claim vulnerable to the defense of laches.

### Prejudice to the Defendant

The second operative element of the laches doctrine requires plaintiff's inexcusable delay to cause prejudice to the defendant. Plaintiff, herein, contends that the Government has not been prejudiced by his delay and that his claim should in no event be barred by the doctrine of laches. The Court of Claims held on numerous occasions that the mere passage of time was not sufficient to bar a claim on the ground of laches and that the Government must show that it was prejudiced by plaintiff's delay. *Ellersick v. United States,* 221 Ct.Cl. 861, 862, 618 F.2d 123 (1979); *Neumann v. United States,* 618 F.2d 119, 219 Ct.Cl. 591, 592 (1979); *Eurell v. United States,* 215 Ct.Cl. 273, 280, 566 F.2d 1146, 1150 (1977).

The defendant has argued that unexcused delay by plaintiff in military pay cases alone may not be sufficient to cause prejudice to the Government, but that by requiring the Government to pay for services of a Major dating back to 1977 that were not wanted and were not received does cause such prejudice. Indeed, if plaintiff were to recover in this case before the Court, the Government will be required to pay not only for services that were not received, but would also be required to pay interest.

Rulings on this type of unrendered services also are embodied in the caselaw of this Court's predecessor. The Court of Claims recognized the increase of Government liability as constituting prejudice. *Adkins,* 228 Ct.Cl. at 912; *Deering,* 223 Ct.Cl. at 350, 620 F.2d at 246; *Gentry v. United States,* 225 Ct.Cl. 654 (1980).

In *Adkins,* the plaintiff delayed for twenty months after discharge to pursue any administrative remedy and delayed five years and four months from discharge before filing suit. The Court explained that:

[I]t is evident that defendant would be prejudiced by plaintiff's recovery, for it would have to pay him for the many years he rendered no service to defendant and delayed advancing his claim, thus enhancing his prospective damages. 228 Ct.Cl. at 912.

The suit in *Adkins* was filed within five years and four months and the Court of Claims found that the magnitude of that delay enhanced plaintiff's damages thereby constituting prejudice. In the instant case, the plaintiff waited five years and five months and any Government liability has increased for that period of time due to plaintiff's lack of diligence.

Plaintiff also has tried to justify his delays in pursuing his remedies, at least in part, by pointing to the difficulties he experienced in locating witnesses in the period between 1977 and 1980. Indeed, if the plaintiff already has experienced difficulty in locating witnesses to initiate the case, prior to 1980, the Government's ability to rebut plaintiff's challenge to the OER rating would be further impeded by the plaintiff's subsequent delay, if the case were to go to trial in the mid 1980's. Unquestionably memories dim and change with the passage of time, decreasing the evidentiary value of testimony. On this point, the Court of Appeals for the Federal Circuit recently stated, quoting from the Claims Court decision in *Pepper*[4], that:

"[E]quity contemplates that [those officials accused of creating the defective OERs] are entitled to defend and explain their acts when their recollections are fresh, and relevant evidence has not disappeared." *Pepper v. United States,* 794 F.2d at 1575.

■ Although plaintiff's cause of action in this Court did not accrue until June 1977, plaintiff's eighteen-month delay in challenging the OER is included in the accumu-

---

**4.** The Claims Court decision is reported as *Pepper v. United States,* 8 Cl.Ct. 666, 677 (1985).

lation of delays for the purposes of determining the applicability of the laches doctrine. Delays, for purposes of laches, are calcaluted from the time plaintiff receives notice of a claim, *i.e.*, in this instance, with the issuance of the alleged defective OER. *Adkins, supra; Pepper, supra.* Plaintiff's argument that his delay was necessary in order to pursue an administrative challenge of the OER is, therefore, irrelevant to a determination of whether the defendant has been prejudiced by the accumulated delays caused by plaintiff when considering the laches doctrine.

■ The longer the delay, the less need there is for the defendant to point to specific prejudice, and the weight shifts increasingly to plaintiff to show a lack of prejudice. *Pepper,* 794 F.2d at 1574–75; *Brundage,* 205 Cl.Ct. at 509, 504 F.2d at 1386; *Deering, supra,* 620 F.2d at 246; *Devine v. United States,* 208 Ct.Cl. 998, 1001, 529 F.2d 532 (1975). *Grisham v. United States,* 183 Ct.Cl. 657, 663, 392 F.2d 980 (1968), *cert. denied,* 393 U.S. 843, 89 S.Ct. 125, 21 L.Ed.2d 114 (1968); *Gersten v. United States,* 176 Ct.Cl. 633, 636, 364 F.2d 850, 852 (1966).

■ This Court finds that plaintiff's delay, totaling five years and five months, demonstrates an inexcusable lack of diligence by plaintiff in bringing the lawsuit, which comports with the first element of the laches doctrine. In addition, such lengthy delay shifts the burden to plaintiff to demonstrate that no prejudice inured to the defendant as a result of his delay. Plaintiff has failed to show the Court that the defendant was not prejudiced by his delay. In fact, it would appear that the passage of time has indeed resulted in prejudice to the defendant. However, even had the defendant failed to show that prejudice resulted from plaintiff's delay, the defendant has, nevertheless, satisfied the second element of the laches defense because plaintiff's inexcusable delay has obviated the necessity for such showing by the defendant.

## CONCLUSION

Upon consideration of the parties' submissions and oral argument, the defendant's motion for summary judgment is granted and plaintiff's cross-motion for summary judgment is denied. The Court finds that the plaintiff failed to diligently pursue the remedies available to him. Moreover, not only has plaintiff failed to rebut the applicable presumption that his numerous delays have prejudiced the ability of the Government in this case to defend the lawsuit, but it would appear, based on plaintiff's own difficulties in preparing his case, including locating witnesses prior to 1980, that there is a strong likelihood that the defendant would in fact be so prejudiced in this case. The Court believes that prejudice to the defendant clearly ensues from the excessively long period of time, caused, largely by plaintiff's delay, for which defendant would have to reimburse plaintiff, and during which plaintiff rendered no service. Although this Court invokes the doctrine of laches reluctantly, it must do so in appropriate situations such as is presented by the facts and arguments in this case.

The Clerk is directed to enter judgment in accordance with the findings herein.