**Ronald J. CORNETTA,
Plaintiff-Appellant,**

v.

**The UNITED STATES of America and John Lehman, Secretary of the Navy, Defendant-Appellee.**

No. 87–1121.

United States Court of Appeals,
Federal Circuit.

Oct. 20, 1987.

George S. King, Broadhurst, Brook, Mangham & Hardy, Baton Rouge, La., argued, for plaintiff-appellant. Also on the brief, was Louis R. Davis, Broadhurst, Brook, Mangham & Hardy, Lafayette, La., of counsel.

John S. Groat, Commercial Litigation Branch, Dept. of Justice, Washington, D.C., argued, for defendant-appellee. With him on the brief, were Richard K. Willard, Asst. Atty. Gen., David M. Cohen, Director and Thomas W. Petersen, Asst. Director. Also on the brief, was LCDR Michael Lawlor, Dept. of Navy, of counsel.

Before BISSELL, Circuit Judge, MILLER, Senior Circuit Judge, and ARCHER, Circuit Judge.

ARCHER, Circuit Judge.

The judgment of the United States District Court for the Western District of Louisiana, Civil Action No. 86–1080, granting summary judgment to the appellees (government) on the basis of laches, is affirmed.

## FACTS

Ronald J. Cornetta (Cornetta) brought this action for reinstatement, back pay, and correction of personnel records nearly seven years after he was separated from the Marine Corps. Cornetta was discharged on May 31, 1979 and thereafter served a three year tour of duty in the United States Coast Guard, which tolled the six year statute of limitations under 28 U.S.C. § 2401(a) (1982) for filing suit. See 50 U.S.C.App. § 525 (1982). Commencement of this action on May 20, 1986 was therefore timely. Upon motion by the government, the district court granted summary judgment against Cornetta based on laches. It found that there was an inexcusable delay in filing this action and that the government was prejudiced by the delay because, if Cornetta were successful, he would receive pay for work he did not perform and which "possibly was performed by another officer," and would receive "some credit toward his retirement for time not spent in the Marine Corps or Coast Guard." Although the government suggested defense prejudice concerning witnesses and documents, the district court's decision was based solely on economic prejudice and the government does not argue defense prejudice on appeal.

Cornetta's separation resulted from being passed over for promotion from the rank of captain to major by two selection boards. 10 U.S.C. §§ 8299(h) and 8303(d) (1976). Included in Cornetta's military service record at the time of the first promotion consideration was an unfavorable fitness report issued by Cornetta's rating officer in May 1977 (Sims report). Before his second consideration for promotion, Cornetta applied to the Board for Correction of Naval Records (Corrections Board) requesting that his record be corrected by

removing the Sims report and clearing his record of the first non-selection for promotion. The Corrections Board recommended that the relief be granted and that Cornetta be presented to the next selection board as if he were for the first time being considered for promotion to major. The Corrections Board also recommended, however, that a second passover by the selection board should continue to be regarded as a second valid failure of selection for promotion for purposes of mandatory separation from the Marine Corps. These recommendations were adopted by the Secretary of the Navy. Cornetta was passed over for a second time and thereafter honorably discharged from the Marine Corps.

## OPINION

■■■ The affirmative defense of laches generally requires that the defendant demonstrate (1) inexcusable delay on the part of the claimant, and (2) prejudice to the defendant as a result of such delay. *Pepper v. United States*, 794 F.2d 1571, 1573 (Fed.Cir.1986). In the absence of a lengthy delay, the defendant asserting laches bears the burden of going forward with evidence to establish that the delay was unjustified. Where the length of the delay is clearly unreasonable, however, the burden of going forward with evidence to justify the delay shifts to the party who delayed. *Id.* at 1574–75; *Adkins v. United States*, 228 Ct.Cl. 909, 912 (1981). In *Pepper* this court held that a delay of six years and four months from the receipt of a challenged fitness report constituted inexcusable delay, despite efforts by the claimant there to justify his delay. *See also Leinoff v. Milona & Sons*, 726 F.2d 734, 742 (Fed.Cir.1984) (delay exceeding six years is presumptively injurious).

■■■ Cornetta has not attempted to justify his delay in commencing this action. Instead he asserts that his outstanding discovery request and his response under Fed. R.Civ.P. 56(f) to the summary judgment motion showed that additional information was needed for him to be able to oppose the government's laches defense and motion for summary judgment. Continuing,

he contends that a party invoking Rule 56(f) need not present proof raising a material issue of fact that would preclude summary judgment and that he should not have been cast with the burden of responding to the laches defense prior to receipt of the requested discovery.

Rule 56(f) provides that a court may deny a motion for summary judgment, grant a continuance or make such other order as is just, if the party opposing the motion cannot present facts necessary to justify his opposition. The district court concluded that, even based on a liberal interpretation of that rule, and considering Cornetta's complaint and the affidavit of his counsel in a light most favorable to appellant, no genuine issue of material fact existed over inexcusable delay. Cornetta did not, according to the district court, indicate what information was sought concerning delay. Cornetta disputes this finding but in his brief he states only that the discovery might be "a partial excuse for the first three years of delay." We cannot say under these circumstances that the district court erred in finding the first prong of the laches defense satisfied.

Cornetta also had the burden of demonstrating that his delay did not prejudice the government. This court explained in *Pepper* that:

"The longer the delay by plaintiff in filing suit, the less need there is to search for specific prejudice and the greater the shift to plaintiff of demonstrating lack of prejudice." *Deering v. United States*, 223 Ct.Cl. 342, 620 F.2d 242, 246 (Ct.Cl.1980). If a plaintiff fails to meet this burden in a meaningful way, it may be presumed, in a proper case, that prejudice is manifest from undue delay. *Wilmot v. United States*, 205 Ct.Cl. 666, 685 (1974). We said in *Leinoff v. Milona & Sons*, 726 F.2d 734, 742 (Fed.Cir.1984), that a delay exceeding 6 years is presumptively injurious and therefore prejudicial. A delay under our precedents need not be that long but the key to these situations is to remember that laches is an equitable defense that aids the vigilant, not those who slumber

on their rights, and it is designed to promote diligence and to prevent enforcement of stale claims. The prejudice to be presumed from undue delay may involve such problems as difficulty in finding witnesses and documents, difficulty in reviving fading memories, or, in some situations, the paying of two salaries for one position or the paying for services not performed. *Adkins v. United States*, 228 Ct.Cl. at 912–13.

794 F.2d at 1574–75. Under this precedent, Cornetta's delay warranted a presumption of prejudice to the government.

Cornetta contends, however, that because he waived back pay in excess of $10,000 to obtain district court jurisdiction under the Little Tucker Act, 28 U.S.C. § 1346(a)(2) (1982), the economic prejudice could not be substantial. As authority, he relies on decisions of our predecessor court indicating that approximately three months and one week of back pay, which the $10,-000 claimed herein would represent to Cornetta, is insufficient to establish prejudice. *See Chappelle v. United States*, 168 Ct.Cl. 362 (1964) (seventeen months' back pay insufficient to establish prejudice); *Carter v. United States*, 213 Ct.Cl. 727 (1977) (back pay claim of less than one year not sufficient); *Rifkin v. United States*, 209 Ct.Cl. 566 (1976), *cert. denied*, 429 U.S. 1098, 97 S.Ct. 1117, 51 L.Ed.2d 545 (1977) (back pay for four and one-half months not substantial economic prejudice).

While it is true that the pay claim was limited in each of the cases relied on by Cornetta, this was not the sole basis on which the laches defense was rejected. The courts also found that other factors supporting laches were not present, such as lost records, unavailability of witnesses, potential of duplicate payment for the same position and the like. Moreover, the length of the delays were not determined to be presumptive of prejudice. In view of the factual differences in the cited cases and their reliance on other factors in addition to the limited monetary amount, we do not regard them as mandating a holding, as Cornetta contends, that the $10,000 Little Tucker Act limitation could never constitute substantial economic prejudice.

The government also claims economic prejudice based on potential retirement pay that would accrue to Cornetta if he prevails on the merits. The argument is that he would be entitled to military retirement based on twenty years of "active" duty, see 10 U.S.C. § 6323 (1982), while actually serving only sixteen years in such a capacity; that he would be immediately eligible for retirement, see 10 U.S.C. § 6323, instead of retirement at age 60, see 10 U.S.C. § 1331 (1982); that his retirement pay would be increased because of the additional years of deemed active service, 10 U.S.C. § 6323(e); and that another officer presumably accrued a duplicate benefit for the same period of time, *Pepper v. United States*, 794 F.2d at 1574–75.

Cornetta argues that potential retirement pay cannot be regarded as economic prejudice because it represents payment for current services, citing *McCarty v. McCarty*, 453 U.S. 210, 101 S.Ct. 2728, 69 L.Ed.2d 589 (1981). In *McCarty*, the Court noted that restrictions are placed on the activities of retired officers, and that such officers are subject to recall to active duty.

These factors have led several courts, including this one, to conclude that military retired pay is reduced compensation for reduced current services. In *United States v. Tyler*, 105 U.S. [ (15 Otto) 244], at 245 [26 L.Ed. 985 (1882) ], the Court stated that retired pay is "compensation ... continued at a reduced rate, and the connection is continued, with a retirement from active service only."

453 U.S. at 222, 101 S.Ct. at 2736. Although the Court found it unnecessary in *McCarty* to decide whether military retired pay is current or deferred compensation, it went on to say at least there was a "possibility that Congress intended military retired pay to be in part current compensation for those risks and restrictions...." *See also Hooper v. United States*, 164 Ct.Cl. 151, 326 F.2d 982, 987 (1987) ("the salary he received was not solely recompense for past services, but a means devised by Congress to assure his availability and preparedness in future contingencies").

Even if retirement pay is regarded as current compensation, the government would nonetheless be subject to economic detriments related to military retirement as a consequence of a decision favorable to Cornetta. Clearly, the years of service credited to him would permit retirement at an earlier age, at a higher rate of pay, and with fewer years of actual active duty service. A favorable decision would also likely increase the overall governmental costs because another officer presumably would be accruing similar benefits for performing the work for which Cornetta would receive credit.

In sum, we are convinced that the district court did not err in applying the doctrine of laches to Cornetta's claim. The commencement of the action was delayed beyond the normal statute of limitations without explanation, which resulted in a presumption of prejudice and a shifting of the burden of going forward with proof that the government would not be prejudiced. Cornetta has not carried this burden; rather, the record shows that substantial economic prejudice to the government would result from the delay.

As an alternative position, Cornetta argues that the district court should have treated his claim for back pay separate from his claims for reinstatement and correction of records. Even if the former is barred by laches, Cornetta contends that the latter, allegedly prospective in the relief sought, do not involve any economic prejudice to invoke laches. This argument admittedly was not raised below. Cornetta in his brief states only that "he continually advised the court of the limited nature of his response under Rule 56(f) [footnote omitted]" and that the court dismissed his complaint "without affording him a full and fair opportunity to take discovery and thereafter present his substantive contentions." The argument that Cornetta now makes is not dependent on any factual development, but purely a question of law. Accordingly, this issue could have been briefed and argued in the summary judgment context. Since it was not, we will not entertain it on appeal for the first time. *Bockoven v. Marsh,* 727 F.2d 1558 (Fed. Cir.), *cert. denied,* 469 U.S. 880, 105 S.Ct. 245, 83 L.Ed.2d 183 (1984).

AFFIRMED.